The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has not shown good grounds to reconsider the evidence. Upon much detailed consideration of the record as a whole, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to hear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, based upon the stipulated facts, the supporting documents submitted by the parties, and the competent, credible, and convincing evidence adduced from the commissions form agreements and orders, the undersigned make the following
FINDINGS OF FACT
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff William H. Welch and defendant Johnson Controls, Inc. prior to and on May 15, 1992.
3. The defendant Johnson Controls, Inc. is insured by American Manufacturers Mutual Insurance Company (Kemper National Insurance Co.).
4. Plaintiff's average weekly wage for the year immediately preceding May 15, 1992, was $523.06. The plaintiff's compensation rate is $348.72.
5. Plaintiff suffered a compensable injury to his right knee on May 15, 1992. He began missing work as a result of his compensable injury on December 8, 1992. The parties entered into a Form 21 Agreement for "necessary" weeks, which was approved by the Industrial Commission on March 2, 1993.
6. After undergoing medical treatment, including surgical intervention, plaintiff was rated as having a 45% permanent partial disability to his right leg by Dr. Poehling, and a 40% permanent partial disability to his right leg by Dr. Supple.
7. Plaintiff returned to work on July 7, 1994, at a reduced wage, on limited duty, restricted to two hours of work per day.
8. The employer stated on the Form 28 that plaintiff was receiving temporary partial disability because he was not receiving the same wages he received before his injury.
9. Following plaintiff's return to work, the employer paid plaintiff temporary partial disability benefits equal to two-thirds the difference between his earnings, working two hours per day, and his pre-injury average weekly wage. The employer never initiated a Form 26 Agreement, and a Form 26 Agreement was never filed.
10. Defendants, believing that plaintiff could work more than two hours per day, scheduled Mr. Welch for an independent medical examination by Dr Romanoff of the Southeast Pain Center in Charlotte, North Carolina. Dr. Romanoff examined Mr. Welch on November 4, 1994. Dr. Romanoff recommended two additional procedures to aid in his diagnosis: (1) a triple phase bone scan; and (2) a differential subarachnoid block.
11. Originally, the bone scan was scheduled for January 3, 1995 and the subarachnoid block for January 11, 1995. However, due to the short notice and the holidays, the appointments were rescheduled for January 16th and January 25th.
12. Defendants provided plaintiff overnight accommodations in Charlotte, on January 15, 1995, because his appointment for the bone scan was scheduled for 7:45 A.M. on January 16th and plaintiff's home is approximately 100 miles from Charlotte. On January 16th, the bone scan was performed as scheduled.
13. On January 25, 1995, Mr. Welch began complaining of severe chest pain. His wife took him to the hospital, and informed defendant carrier and plaintiff's counsel that he might be admitted for an overnight stay. Plaintiff's counsel contacted the carrier, and informed the carrier that Mr. Welch would not be able to keep the appointment scheduled for January 25, 1995. The carrier called Dr. Romanoff's office and cancelled the January 25th appointment. Mr. Welch was discharged from the hospital late on January 24, 1995. He was told that he could keep his appointment with Dr. Romanoff. Since Mr. Welch was unsure of whether or not the appointment had been cancelled, he drove to Charlotte the next morning. However, he was informed by Dr. Romanoff's assistant this his appointment had been cancelled. Dr. Romanoff was not in the office on January 25th.
14. While Mr. Welch was still at Dr. Romanoff's office, plaintiff's counsel contacted defendants and requested approval for the test to be performed in Dr. Romanoff's absence. Defendants declined since Dr. Romanoff was their choice for the independent medical examination.
15. The appointment for the subarachnoid block was then rescheduled for February 21, 1995. Plaintiff's counsel contacted defendants and requested they again provide overnight accommodations for plaintiff. Defendants declined the request since the appointment was scheduled for 9:00 A.M. rather than 7:45 A.M. Defendants warned plaintiff that if he failed to keep his February 21 appointments his compensation benefits would be stopped.
16. Plaintiff drove to Charlotte on the morning of February 21, 1995 for his 9:00 A.M. appointment. However, he did not arrive at Dr. Romanoff's office until 9:40 A.M. Dr. Romanoff's office staff stated that the test could not be performed due to his late arrival.
17. The test was rescheduled for March 6, 1995, at 8:30 A.M.
18. On February 22, 1995, plaintiff's counsel received correspondence, via facsimile, from defendants' counsel, stating that plaintiff's "workers' compensation disability payments" would be terminated since he had missed another appointment. Plaintiff's counsel responded, demanding that, pursuant to Rule 404, plaintiff's benefits be restarted immediately, since an I.C. Form 24 Agreement had never been filed nor approved.
19. Defendants stopped paying plaintiff temporary partial disability benefits, without filing a Form 24 — Application to Terminate or Suspend Payment of Compensation. Mr. Welch's compensation ceased effective February 12, 1995.
20. Mr. Welch planned to attend the March 6, 1995 appointment at Dr. Romanoff's office. However, defendants decided not to authorize the diagnostic procedure.
21. On March 10, 1995, plaintiff filed his Motion to Reinstate Temporary Partial Disability Benefits and Motion for Sanctions. On March 22, 1995, Executive Secretary Nick Davis entered an Order stating: "Defendants are Ordered to Reinstate benefits and a 10% Penalty is being assessed on all late payments."
22. On March 10, 1995, pursuant to Industrial Commission Rule 703(1), defendants appealed the administrative decision of the Executive Secretary by filing a Form 33 — Request That Claim Be Assigned For Hearing. Defendants did not comply with the Order to reinstate benefits and pay a 10% Penalty. On April 13, 1995, plaintiff, by letter, requested that the Executive Secretary again order defendants to reinstate Mr. Welch's benefits.
23. On April 26, 1995, the Executive Secretary again ordered defendants to reinstate plaintiff's benefits. Defendants again refused to comply with the Order of the Executive Secretary, and filed a second appeal by filing a second Form 33. Plaintiff again requested that the Industrial Commission enforce its own Order and utilize the sanctions provided by Industrial Commission Rule 802. On May 10, 1995, the Executive Secretary issued his third Order, which stated in part:
Even though an appeal does not stay an Order no further ruling will be issued.
Plaintiff's request will have to be heard and decided by a Deputy Commissioner.
24. This case was then scheduled for hearing on October 18, 1995 in Winston-Salem, before the Deputy Commissioner. The parties agreed that the issues to be resolved were legal and not factual. The parties waived an evidentiary hearing and requested the opportunity to submit briefs.
* * * * * * * * * * *
The foregoing stipulations and finding of fact engender the following
CONCLUSIONS OF LAW
1. All parties hereto are subject to and bound by the provisions of the North Carolina Worker's Compensation Act. N.C.G.S § 97-1; 97-2.
2. Pursuant to a Form 21 Agreement approved by the Industrial Commission on March 2, 1993, defendants admitted liability for plaintiff's injury and agreed to pay plaintiff a period of disability for the "necessary" weeks giving rise to the presumption of continuing disability. Plaintiff is entitled to said benefits as agreed upon in the Form 21 Agreement. N.C.G.S. §97-29. Kisiah v. W. R. Kisiah Plumbing, Inc., ___ N.C. App. ___, 476 S.E.2d 434 (1996).
3. When plaintiff returned to work on July 7, 1994, he was not able to earn the same wages as before his compensable injury and was therefore entitled to temporary partial disability benefits. N.C.G.S. § 97-30.
4. Even though defendants did not enter into a Form 26 Supplemental Agreement to pay temporary partial benefits, defendants are nonetheless bound under the Form 21 Agreement to continue paying plaintiff the benefits to which he is entitled and are not allowed to terminate said benefits without an order of the Industrial Commission. N.C.G.S. § 97-18, § 97-18.1; Rule 404 of the Rules of the Industrial Commission.
5. Defendants' unilateral termination of plaintiff's temporary partial disability benefits effective February 12, 1995, was improper and without notice to or approval by the Commission and is in violation of N.C.G.S. § 97-18.1.
6. Defendants cannot by their actions and representations pay a claim pursuant to the provisions of the Workers' Compensation Act, and then when it suits their purpose "(pull) the rug out from under" the plaintiff, and deny that the payment of partial disability benefits was made subject to the Workers' Compensation Act. See Craver v. Dixie Furniture Co., 115 N.C. App. 570, 447 S.E.2d 789 (1994); Kersey v. Durham RegionalHospital, I.C. No. 904446, Opinion and Award for the Full Commission (decided May 1, 1995); Freeman v. Burroughs WelcomeCompany, I.C. No. 920700, Opinion and Award for the Full Commission (decided May 1, 1995).
7. The Order of the Executive Secretary, Filed March 22, 1995, (requiring defendants to continue to pay plaintiff's temporary partial disability benefits) was an Administrative Decision appealable pursuant to Rule 703. However, the effect of the Order could only be stayed by a decision of the Executive Secretary or a Commissioner or Deputy Commissioner. Rule 703(2).
8. Defendants' flagrant refusal to abide by the Rules and the multiple Orders of the Industrial Commission is viewed as an attempt to circumvent the statutory authority of the Industrial Commission. Defendants' refusal to abide by the Rules and Orders of the Industrial Commission subjects them to sanctions. N.C.G.S. § 97-88.1; Rule 802.
* * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following
AWARD
1. Defendants shall immediately reinstate plaintiff's temporary partial disability benefits from the period beginning February 13, 1995, and continuing until such time as the Commission allows the termination of those benefits. The compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff, in addition to the payments ordered in paragraph 1, an additional 10% of the compensation that has accrued during the period beginning February 13, 1995, and continuing until the benefit is paid in a lump sum as ordered above.
3. Defendants shall pay to plaintiff 8% interest, from the date of the Executive Secretary's March 22, 1995 Order, on the disability benefits due and payable at the time the Order was entered and on each weekly payment thereafter with interest beginning on the date the payment was due.
4. Plaintiff's counsel is entitled to an attorney's fee of twenty-five percent (25%)of the accrued compensation awarded herein, plus reimbursement for the costs incurred in prosecuting this action to be determined by submission of time and service statements to defendants. Defendants shall directly pay plaintiff's counsel his fees and costs; for the amount expended in defending this appeal, this amount shall be paid directly by defendants and shall not be deducted from the sums due plaintiff. Any disagreement in this regard as to amount due should be brought immediately to the attention of the undersigned. After payment of attorney's fees based upon the accrued compensation due plaintiff, defendants shall pay to plaintiff's counsel every fourth check of all future benefits due plaintiff; this sum shall be deducted from the amount due plaintiff.
5. Defendants shall pay the costs.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket
This the ____________ day of August, 1997.
 S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________ LAURA K. MAVRETIC COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER